**Affirmed and Memorandum Opinion filed May 8, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00204-CR

---

**LARRY DARNELL WEST, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1249489**

---

## MEMORANDUM OPINION

Appellant Larry Darnell West appeals his conviction of sexual assault, claiming in one issue that he received ineffective assistance of counsel and asserting in three other issues that the trial court erred in the following ways: (1) excluding evidence relating to a civil lawsuit filed by the complainant in an unrelated incident; (2) admitting testimony from the State's rebuttal witness; and (3) overruling appellant's objections to the State's

characterization of him as a sexual predator during the State's closing argument in the punishment phase. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the felony offense of sexual assault arising from an incident in which appellant allegedly robbed a laundromat and physically and sexually assaulted the complainant, a female employee. The indictment alleged two enhancement paragraphs for prior felony convictions. Appellant pleaded "not guilty" to the charged offense.

At trial, the complainant testified that she was employed at a laundromat and opened the business one morning when appellant, wearing a jacket with the hood over his head, entered the establishment and asked to use the restroom. Despite being told that the restroom was for customers' use only, appellant entered the restroom. According to the complainant, when appellant exited the restroom, he demanded keys to the building. He then struck her in her eye with his fist and knocked her to the ground as she was retrieving the keys from her pocket. The complainant stated that appellant used the keys to lock the front door of the establishment, retrieved a cash box, and forced her to a back office. In the office, appellant told the complainant to pull her pants down, instructed her to lay on the floor, and then placed his penis inside her sexual organ. He then locked her inside the office with a padlock, left the keys on the floor, and fled through the front door with the cash box.

According to the record, Donald Lee Harmason, a long-time friend of the complainant's, discovered her in the office, released her, and offered her money needed to call law enforcement. The complainant told responding officers about the robbery, but because she did not feel comfortable discussing the sexual assault, she did not tell them about it. Although the complainant claimed to have recognized appellant, she did not know his name and could not recall how she recognized him when she talked to investigators. The record reflects that appellant knew the owner of the laundromat, and had worked at one point for the owner at other business locations, and had accompanied

2

the owner to that location on at least one occasion when the complainant was working there.

The complainant was taken by ambulance to a hospital for treatment of the lacerations to her eye. At the hospital, the complainant told a nurse about the sexual assault. Semen samples taken during a sexual-assault examination of the complainant revealed a DNA profile that matched appellant's DNA profile. The complainant later identified appellant from a photo line-up as the person who sexually assaulted her.

Appellant testified and admitted to having sexual intercourse with the complainant, an act that he claimed was consensual and performed in exchange for money. According to appellant, after the two engaged in sexual intercourse, the complainant complained that he had not paid her enough money. Appellant claimed that the complainant grabbed him by his shoulder and he swung at her with his arm as he left the premises. According to appellant, he was reflexively trying to wave the complainant off of him, but he did not know if he actually made contact. He denied locking the complainant in the office before leaving the premises. Appellant testified that in the past he had paid women to have sex with him. According to appellant, these women, many of whom used narcotics or consumed alcohol, "wanted what they wanted," and he "wanted what [he] wanted."

The jury found appellant guilty as charged. At the punishment hearing, appellant pleaded "true" to the enhancement allegations and stipulated to five prior felony convictions for theft. The enhancement paragraphs were found to be true. The jury assessed appellant's punishment at seventy years' confinement.

### ISSUES AND ANALYSIS

**Did the trial court err in excluding evidence relating to the complainant's civil lawsuit?**

In his first issue, appellant claims the trial court improperly excluded evidence of the complainant's civil lawsuit filed against a railroad company in connection with an unrelated incident. According to appellant, the complainant had a financial motive to

3

engage in an act of prostitution with him and that evidence of the civil lawsuit demonstrated that the complainant sought monetary compensation. Appellant claims that because he was not permitted to cross-examine the complainant about the civil lawsuit, he was prevented from putting forth evidence of the complainant's financial motive for the jury's consideration to find that the complainant engaged in consensual prostitution, which was his central defensive theory.

The record reflects that in March 2006, the complainant filed a civil suit against a railroad company on behalf of her children relating to "some type of gas." When appellant's defense counsel sought to elicit testimony from the complainant about this civil suit, the State objected that the evidence had no relevance in the criminal case. Appellant claimed that the evidence showed that by filing suit, the complainant had financial hardships, and that the complainant had a motive. The trial court sustained the State's objection and ruled that appellant could ask questions on cross-examination about other sources of income available to the complainant.

A trial court's evidentiary ruling is reviewed for abuse of discretion. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). Under this standard, the trial court does not abuse its discretion if the ruling was within the zone of reasonable disagreement. A reviewing court will uphold the trial court's decision if the ruling is correct on any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000).

Whether a witness brought a civil suit against a defendant arising from the same incident for which the defendant is on trial is admissible as tending to show interest and bias. *See Hoyos v. State*, 982 S.W.2d 419, 421 (Tex. Crim. App. 1998). Relevance of such evidence is derived from the impeachment value to show motive to give false testimony based on a witness's desire to recover damages or other relief. *See Palermo v. State*, 992 S.W.2d 691, 698 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). But, proof that a witness has initiated suit against a third party, even as a result of the circumstances upon which the criminal action against the defendant is based, is not necessarily relevant

4

to show bias against the defendant. *See Hoyos*, 982 S.W.2d at 421. We consider the following four factors to determine whether evidence of the civil suit against a third party is relevant: (1) whether the criminal defendant is a party to the civil suit; (2) whether a relationship existed between the criminal defendant and the third party; (3) whether a fact issue existed in the civil suit as to the occurrence of the crime; and (4) whether any other reason existed to believe the civil suit might cause the witness to be biased. *See Hoyos*, 982 S.W.2d at 421.

When applying the four factors to the case under review, none of the factors support the relevance of the complainant's civil suit for the purpose of showing the complainant's bias or motive to testify falsely against appellant. *See id.* at 421–22. The record does not reflect that appellant was a party to that civil suit or that he shared a relationship with the railroad company or the subject matter. The record does not show that a fact issue existed in the civil suit as to the occurrence of the crime. No other reason supports a legitimate basis to believe that the civil suit might cause the complainant to be biased against appellant at the criminal trial. *See id.*

Appellant was free to present other evidence of the complainant's purported financial hardship. The trial court did not abuse its discretion in sustaining the State's objection to introduction of evidence relating to the complainant's civil suit against a railroad company because it was not relevant and did not give rise to an inference of bias. *See id.*; Tex. R. Evid. 402, 403. We overrule appellant's first issue.

**Did the trial court improperly admit testimony from the State's rebuttal witness?**

In his second issue, appellant claims the trial court erred in admitting the testimony of rebuttal witness, Donald Lee Harmason, called by the State because the witness's name was not properly disclosed before trial.

The State called the witness (Harmason) to rebut the testimony of the laundromat owner, who previously had been called by the defense, out of order, to testify. The owner testified that when he arrived at the laundromat after the incident occurred, he saw a man

5

on a bicycle along with the complainant's parents. Although the owner did not know the man, he learned from the complainant that the man was her long-time friend. The owner testified that he learned from the complainant that "some guy" freed the complainant from the locked office. When asked if he recalled that the long-time friend was the person who freed the complainant, the owner agreed that a "friend or somebody" helped her. The owner denied talking to the friend or knowing anything about the friend. The owner denied knowledge about the complainant's personal relationships.

When the State sought to call Harmason to the stand, appellant objected, asserting that Harmason had not been identified on the witness list. Appellant expressed his understanding that Harmason served as the State's rebuttal witness to rebut the owner's testimony. When appellant objected to Harmason testifying because the defense had no notice, the State argued that it did not know that Harmason's testimony would be important until after the owner had testified. The trial court overruled the objection.

Harmason, who testified the following day, claimed that he rode his bicycle to the laundromat, saw the complainant in the locked office, picked up the keys from the floor, and unlocked the office door to free her. He did not know about the sexual assault until he spoke with the complainant at a later time. He did not speak with investigating officers. Neither party questioned Harmason about the owner or the owner's testimony.

The State is not required to disclose rebuttal witnesses because it cannot predict the theories or evidence the defense will present at trial. *See Beets v. State*, 767 S.W.2d 711, 747–48 (Tex. Crim. App. 1987) (op. on reh'g); *Hoagland v. State*, 494 S.W.2d 186, 188–89 (Tex. Crim. App. 1973). We review a trial court's decision to allow an undisclosed witness to testify under an abuse-of-discretion standard. *Bridge v. State*, 726 S.W.2d 558, 566 (Tex. Crim. App. 1986); *Cureton v. State*, 800 S.W.2d 259, 262 (Tex. App.—Houston [14th Dist.] 1990, no pet.). Absent a showing of bad faith, a trial court does not abuse its discretion by allowing the State to call an undisclosed witness for the sole purpose of rebutting unforeseen testimony. *See Marx v. State*, 953 S.W.2d 321, 338 (Tex. App.—Austin 1997), *aff'd*, 987 S.W.2d 577 (Tex. Crim. App. 1999).

6

We consider two factors when determining whether the trial court abused its discretion in allowing an undisclosed witness to testify: (1) whether the prosecutor acted in bad faith in failing to provide the defense with a witness's name; and (2) whether the defendant reasonably could have anticipated that the witness would testify despite the State's failure to disclose the witness's name. *Cureton*, 800 S.W.2d at 262. If an appellant does not demonstrate these factors on appeal, the trial court's decision to admit the testimony will not be disturbed. *Castenada v. State*, 28 S.W.3d 216, 223 (Tex. App.—El Paso 2000, pet. ref'd).

We consider the following three areas of inquiry to determine whether the State acted in bad faith: (1) whether the defense demonstrates the State's intent to deceive; (2) whether the State's notice left the defense adequate time to prepare; and (3) whether the State freely provided the defense with information by maintaining an open-file policy or providing updated witness lists, for example. *See Martinez v. State*, 131 S.W.3d 22, 29 (Tex. App.—San Antonio 2003, no pet.). According to the State, it did not know Harmason's testimony would be important until after the defense called the owner to testify. Appellant did not assert that, once the trial court ruled to admit Harmason as a rebuttal witness, he did not have adequate time to prepare or that the State failed to provide information about Harmason to the defense. To the contrary, the record reflects that Harmason did not testify until the following day, which gave appellant an opportunity to prepare to vigorously cross-examine him. *See id.* at 30. The record does not establish that the State acted in bad faith. *See id.* at 29–30.

In considering whether appellant reasonably could have anticipated that Harmason would testify, we consider the following factors: (1) the degree of surprise to the accused; (2) the degree of disadvantage inherent in that surprise (e.g., the witness provided cumulative or uncontested issues); and (3) the degree to which the trial court could remedy the surprise. *See id.* Appellant could hardly have been surprised from Harmason's testimony because the testimony was cumulative of similar evidence already before the jury; the record reflects numerous witnesses testified that a friend of the

7

complainant's opened the door to the locked office and freed the complainant. *See id.* at 30 (providing that accused was aware of content of testimony). The record reflects that appellant reasonably could have anticipated the testimony from Harmason that he was the person who freed the complainant from the back office of the laundromat. *See id.*

To the extent appellant complains on appeal that Harmason's testimony actually did not rebut any prior testimony and served only to bolster the complainant's testimony, appellant has failed to preserve this issue for appellate review. Because appellant did not voice this objection or move to strike the testimony in the trial court, appellant waived this complaint. *See* Tex. R. Evid. 103(a)(1) (providing that to preserve error in admitting evidence, a party should object or move to strike the testimony); *Heidelberg v. State*, 36 S.W.3d 668, 673–74 (Tex. App.—Houston [14th Dist.] 2001, no pet.). We overrule appellant's second issue.

**Did the trial court err in overruling appellant's objection to the State's characterization of him as a sexual predator during the State's closing argument in the punishment phase?**

In his third issue, appellant claims the trial court erred in allowing the prosecutor to characterize him as a sexual predator during the State's punishment-phase closing argument. The record of the punishment phase reflects that the State waived its right to be the first to give closing argument; appellant's trial counsel gave closing argument, and the State then gave a closing argument in which the prosecutor made the following remarks:

> [Prosecutor]: There isn't a cure for sexual predators. There isn't. You can only keep them away from those who are our most vulnerable victims. That is all, that is all we know to do.
>
> And with regard to sexual predator, what does one look like?

The trial court overruled appellant's objection to the prosecutor's characterization of appellant as a sexual predator, and the prosecutor continued, as follows:

> [Prosecutor]: What does a sexual predator look like?
>
> You know what? It would be a lot easier if sexual predators had a tattoo on their forehead[s] that let you know what is going on in their head

8

and what they might be doing. But honest[ly], that doesn't happen. The scariest of them can walk amongst us in society and play the roles that they want—that people want them to play and not let them know about their secret desires and fantasies and the fact that they could go have breakfast and then brutally rape a woman on a concrete floor.

The prosecutor then asked the jury to consider the nature of the offense and the nature of the defendant. The prosecutor stated that appellant enjoyed and was aroused by control and referred to appellant's testimony that he "wants what [he] wants" in reference to his past practices of paying prostitutes for sex. The prosecutor referred to other examples of appellant's nature, citing appellant's own testimony, before ultimately asking the jury to assess a sentence of fifty years or more.

A proper jury argument fits into one of four general areas: (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) answers to the arguments of opposing counsel, and (4) pleas for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). We analyze the statement in light of the entire argument and not on isolated sentences. *See Delarue v. State*, 102 S.W.3d 388, 405 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

The record reflects appellant's own admission in the guilt-innocence phase that, in the past, he had paid women to have sex with him. Appellant testified that despite this practice, he did not "prey on women." Appellant's trial counsel made the following pertinent statements in closing argument at punishment:

> We understand what, you know, back on January 25th, 2007, an incident occurred. But I just don't want you to believe or have a painted picture that Mr. West is in any kind of way a predator or monster or anything of the sort, that he does have a kind and gentle heart.

The prosecutor's characterization of appellant as a "sexual predator" amounted to permissible argument in response to arguments of opposing counsel, in which counsel claimed appellant was not a predator. *See Delarue*, 102 S.W.3d at 405. Likewise, given appellant's own testimony that he did not prey on women, the prosecutor's remark could constitute a reasonable deduction from the evidence based on both the complainant's

9

account of the incident and appellant's own testimony that the sexual encounter on the concrete floor of a public business during business hours was "not romantic." *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The trial court did not err in overruling appellant's objection to the remarks. *See id.* at 115–16. We overrule appellant's third issue.

**Did appellant receive ineffective assistance of counsel at trial?**

In his fourth issue, appellant asserts that he received ineffective assistance of counsel at trial and, in support of this claim, appellant cites to the following alleged deficiencies by his trial counsel: (1) failure to obtain a ruling on his motion to allow appellant to testify free from impeachment of other convictions; (2) failure to generate a record of evidence relating to the complainant's civil lawsuit; (3) failure to request a continuance when the trial court overruled appellant's objection to Harmason testifying as a rebuttal witness and in the cross-examination of this witness; (4) "opening the door" on direct testimony about appellant's prior felony convictions and extraneous-offense evidence; and (5) failure to introduce mitigating evidence or call any witnesses during the punishment phase.

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. art. 1.051 (West 2005). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92. Moreover, appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

10

In assessing appellant's claims, we apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When, as in this case, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). If there is no hearing or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective-assistance claim. *Stults v. State*, 23 S.W.3d 198, 208–09 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The Court of Criminal Appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On such a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)). There was no motion for new trial filed in this case.

### Failure to obtain a ruling on a motion to allow appellant's testimony free from impeachment of prior convictions

The record contains appellant's motion to permit appellant to testify free from impeachment by prior criminal convictions; the trial court did not rule on the motion. Eliciting testimony from an accused as to his own prior convictions can be a matter of sound trial strategy if the prior convictions are admissible. *See Martin v. State*, 265 S.W.3d 435, 443 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

A witness may open the door to otherwise inadmissible evidence of prior convictions when he creates a false impression about an accused's criminal history. *See James v. State*, 102 S.W.3d 162, 180–81 (Tex. App.—Fort Worth 2003, pet. ref'd). This exception is construed narrowly. *See id.* As reflected in the record, Al Pye testified that

his moving business would only hire employees with integrity because he trusted employees, including appellant, not to commit theft. On cross-examination, although Pye admitted having knowledge that appellant had been in jail, Pye denied knowing that appellant had been convicted of robbery, burglary, and two times for theft by receiving. Appellant then testified and confirmed he had a 1984 robbery conviction, two theft convictions, respectively in 1992 and 1997, and a burglary conviction in 2002. When, as in this case, a defendant testifies, the defendant places his credibility at issue and may thereafter be impeached like any other testifying witness. *See Geuder v. State*, 142 S.W.3d 372, 375 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Under Texas Rule of Evidence 609(a), for the purpose of attacking the credibility of a witness, evidence that a person was convicted of a crime may be admissible if the prior conviction was a felony or a conviction that involved moral turpitude. Tex. R. Evid. 609(a). Before evidence is admitted, the trial court must determine that the probative value of the evidence outweighs the prejudicial effect to the party. *Id.* Evidence of a conviction is admissible under this rule if a period of less than ten years has elapsed since the date of the conviction or the release date of the witness from confinement imposed for that conviction. Tex. R. Evid. 609(b).

In applying Rule 609(b) to the dates of the convictions, appellant's 2002 conviction for burglary was admissible. *See* Tex. R. Evid. 609(b). As for appellant's 1997 convictions for theft and financial transaction card theft and appellant's 1992 conviction for theft, although these crimes may be too remote as falling outside of the ten-year period before the instant offense, theft is a crime of moral turpitude, such that those convictions, likewise are admissible under Rule 609(a). *See* Tex. R. Evid. 609(a); *Rodriguez v. State*, 129 S.W.3d 551, 559 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (providing that theft is a crime of moral turpitude and that such convictions involving moral turpitude can be "tacked onto" remote convictions to remove the taint of remoteness); *Lape v. State*, 893 S.W.2d 949, 958 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Because appellant was convicted of crimes involving moral turpitude, those

12

convictions can remove the taint of the remoteness of appellant's 1984 robbery convictions, rendering the 1984 conviction, likewise, admissible. *See Martin*, 265 S.W.3d at 443–44; *Rodriguez v. State*, 129 S.W.3d 551, 559 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Consequently, the prior convictions are admissible if the probative value of the evidence outweighs the prejudicial effect. *See* Tex. R. Evid. 609(a); *Martin*, 265 S.W.3d at 444; *Rodriguez*, 129 S.W.3d at 559.

In appellant's motion, he cited a number of factors set out in *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992), as supporting his argument that the probative value of the prior convictions was outweighed by the prejudicial effect. As one basis of appellant's ineffective-assistance claim, appellant asserts that his trial counsel did not obtain a ruling on the motion or ask the trial court to conduct an analysis using the *Theus* factors. The record is silent as to the reasons behind trial counsel's strategy for not obtaining a ruling on the motion. Appellant has not met the burden of demonstrating that his counsel was deficient.

### *Failure to make a record of excluded evidence relating to the complainant's civil lawsuit*

Appellant claims that his trial counsel failed to comply with Texas Rule of Evidence 103(a)(2), which requires a party complaining of the exclusion of evidence to make the substance of the evidence known to the trial court by an offer of proof, unless the substance was apparent from the context within which the questions were asked. *See* Tex. R. Evid. 103(a)(2). Although appellant did not put on a formal offer of proof with questions and answers, this kind of offer is not required to preserve error when counsel seeking admission of the evidence describes the evidence to the trial court or when the content of the evidence is apparent from the context. *See Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009); *Fox v. State*, 115 S.W.3d 550, 559 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

The record reflects that appellant's trial counsel described the nature of the proffered evidence of the complainant's civil suit filed in March 2006 against a railroad

company on behalf of her children as relating to "some type of gas." According to the record, it is possible that at the time the charged offense occurred, the civil suit was in the middle of settlement negotiations. Appellant's trial counsel claimed that the evidence was relevant to show that by filing suit, the complainant sought monetary damages and had endured financial hardships, which, in turn, resulted in her resorting to prostitution. An informal bill of review will suffice as an offer of proof when it includes a concise statement of counsel's belief of what the testimony would show. *See Johnson v. State*, 233 S.W.3d 109, 117 (Tex. App.—Houston [14th Dist.] 2007, no pet.). To preserve error, an informal bill must include a summary of the proposed testimony. *Id.* Given the brief description of the proffered evidence with concise facts, as reflected by the record and stated by trial counsel regarding the civil suit, appellant's trial counsel did not render ineffective assistance. *See id.*

### Failure to move for a continuance upon learning of an undisclosed rebuttal witness

Appellant claims that his trial counsel should have moved for a continuance when the trial court ruled to allow Harmason's testimony. According to appellant, without a continuance and given counsel's failure to state how appellant would be harmed, the trial court was unable to remedy the surprise appellant complains of upon learning of Harmson's testimony. Whatever counsel's rationale for failing to seek a continuance, it is not reflected on this silent record. Consequently, appellant has not rebutted the strong presumption of competent representation by showing that no competent attorney would have failed to move for a continuance. *See Miranda v. State*, 993 S.W.2d 323, 329 (Tex. App.—Austin 1999, no pet.) (providing that trial counsel did not render ineffective assistance of counsel by failing to move for a continuance or a mistrial when the State called a "surprise" witness). Moreover, appellant has not demonstrated how he would have benefitted from the continuance to show he was prejudiced given that he had time to prepare and that Harmason did not testify until the following day. *See Bernal v. State*, 930 S.W.2d 636, 641 (Tex. App.—Corpus Christi 1996, pet. ref'd) (providing that a trial counsel did not provide ineffective assistance of counsel for failing to move for a

14

continuance when the appellant did not demonstrate how he would have benefitted from the continuance).

### Eliciting testimony of appellant's prior felony convictions and past practice of paying women for sex

Appellant complains that his trial counsel rendered ineffective assistance by eliciting testimony on direct examination of witness Al Pye, appellant's former employer, regarding appellant's prior felony convictions and past experiences in paying women for sex. Appellant claims that trial counsel improperly opened the door to appellant's own prior convictions, leaving the false impression that appellant did not have a criminal record. Because we have concluded that the convictions were admissible, it is possible that trial counsel's candor in eliciting the testimony of the convictions was a strategic attempt to appear open and honest and to lessen the impact of impeachment on the issue. *See Martin*, 265 S.W.3d at 445. We cannot conclude that appellant's trial counsel rendered ineffective assistance of counsel with regard to the introduction of appellant's prior felony convictions. *See id.*

Appellant also complains his trial counsel opened the door to extraneous-offense evidence by eliciting testimony from a former co-worker, Calvin Jonson, that he knew appellant routinely used prostitutes and personally saw appellant pay money for sex on multiple occasions. Appellant also complains of Pye's testimony of seeing appellant having sex with a woman in a moving trailer while he was traveling for work. Appellant testified to engaging in sex with women in exchange for money and claimed that the complainant consented to have sex with him in exchange for money. The defensive strategy that appellant and the complainant engaged in consensual sex, as acknowledged by appellant in his appellate brief, was the central issue to appellant's defense. When a defendant in a prosecution for sexual assault raises a defensive theory of consent, he places his intent at issue, and extraneous-offense evidence may be admissible if relevant to that contested issue. *See Webb v. State*, 995 S.W.2d 295, 301 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (concluding trial counsel did not render ineffective assistance by failing to object to extraneous-offense rebuttal evidence relevant to the issue of

15

consent in a sexual assault case). Appellant has not demonstrated that trial counsel's strategy in contesting whether the charged offense was consensual was unreasonable or unsound, and therefore has failed in his burden of rebutting the strong presumption that his trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms. *See Jenson v. State*, 66 S.W.3d 528, 542 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (concluding trial counsel did not render ineffective assistance by opening the door to questioning about prior bad acts, which amounted to plausible trial strategy).

### *Alleged failure to offer mitigating evidence or call witnesses at the punishment phase*

Appellant complains that his trial counsel should have proffered mitigating evidence or called witnesses at the punishment phase. Appellant acknowledges that some character evidence was introduced at the guilt-innocence stage, but asserts this evidence was "washed away" and subsumed by the other evidence of appellant's prior felony convictions, to which he stipulated. Counsel's failure to present mitigating evidence or a witness in the punishment phase is irrelevant absent a showing that such evidence was available and that appellant would have benefitted from the evidence. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983). Appellant has failed to establish that his trial counsel's representation was deficient. *See id.*

We find no merit in any of appellant's ineffective-assistance-of-counsel points. Accordingly, we overrule appellant's fourth issue.

16

The trial court's judgment is affirmed.


/s/      Kem Thompson Frost
Justice


Panel consists of Justices Frost, Brown, and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).